JOURNAL ENTRY and OPINION
 Introduction {¶ 1} Plaintiff-appellant James Kassouf brings two separate but consolidated appeals (numbers 80597 and 81012). Both appeals arise out of post-divorce decree motions filed by both Kassouf and his ex-wife defendant-appellee Phyllis Pantona. Although the underlying facts are relevant to both appeals, each appeal raises distinct arguments and therefore each warrants a separate discussion. In appeal number 80597, Kassouf argues that the trial court erred in dismissing his request for child support. In appeal number 81012, he argues that the trial court erred in denying his motion to vacate the trial court's order that required him, after he had taken the couple's children to Lebanon, to return them to the jurisdiction of the court. For the reasons set forth below, we affirm.
 Appeal Number 80597 Facts {¶ 2} Plaintiff-appellant James Kassouf ("Kassouf") and defendant-appellee Phyllis Pantona ("Pantona") were divorced on January 8, 1988, upon which Pantona was awarded custody of their two minor children. On July 16, 1990, Kassouf filed an emergency motion for immediate possession and temporary custody of the children. The next day, the trial court awarded Kassouf emergency custody. On January 10, 1991, Kassouf filed a motion to modify child support, arguing that Pantona should henceforth pay instead of receive child support. On May 26, 1992, the trial court awarded Kassouf permanent custody and ordered Pantona to pay child support in the amount of $2,000 per month. Pantona appealed (numbers 63945, 63947, 64030 and 65475). This court affirmed the order granting permanent custody but remanded the judgment regarding the amount of child support because the trial court's order did not include the required child support worksheet. On September 19, 1995, the trial court issued another order, this time with the worksheet, requiring Pantona to pay $1,900 per month in child support beginning February 1, 1991. The trial court also recognized that Pantona was in arrears in payment in the amount of $81,390.31. Pantona appealed again (number 69673). This court dismissed the appeal for lack of a final appealable order (health care coverage issues were still pending).
 {¶ 3} On July 26, 1996, the trial court, after receiving numerous post-decree motions, filed another judgment entry resolving all issues and including a child support worksheet. Pantona appealed (number 71156). This court reversed the July 26, 1996 order and remanded for the determination of the proper child support. In preparation for trial, Kassouf made objections to Pantona's discovery requests based on his Fifth Amendment right against self-incrimination, asserting that he was under investigation by the IRS and that some of the records were currently out of his possession. Pantona filed a brief in opposition to Kassouf's objections. The magistrate issued an order rejecting Kassouf's argument[1] and requiring Kassouf to comply with Pantona's discovery requests by August 13, 1999. Kassouf filed an objection to this order, which was rejected by the trial court because, the trial court said, the parties had had an opportunity to brief the Fifth Amendment issue. Kassouf appealed this order (number 76813) on August 13, 1999 and on the same day filed with the trial court a motion to stay pending the appeal.
 {¶ 4} The trial court denied Kassouf's motion to stay, stating that Kassouf's "posture as to discovery and testimony has continued since this matter was reversed and remanded by the Court of Appeals [number 71156]." The trial court also stated that Kassouf, "as the movant for child support, must present evidence or risk denial of his motions. He cannot seek the relief of this court while refusing to provide evidence not protected by his Fifth Amendment rights." Discovery continued. On September 10, 1999, Pantona filed a motion for sanctions and dismissal pursuant to Civ.R. 41(B)(1). On October 4, 1999, this court sua sponte dismissed Kassouf's appeal (number 76813).
 {¶ 5} On January 22, 2001, the magistrate entered the following order:
 {¶ 6} "On or before February 2, 2001, [Kassouf] shall comply with [Pantona's] request for Production of Documents filed June 30, 1999 as to [Kassouf's] personal federal income tax returns 1991 through 1998. [Pantona] does not waive any rights as to additional discovery requests. [Kassouf] shall continue to comply with all other discovery requests. [Kassouf] has previously asserted his Fifth Amendment rights in refusing to produce many of the above items, [sic] however, in this civil matter which was initiated by [Kassouf], the assertion of his Fifth Amendment rights may result in an inference by the court as to his income.
 {¶ 7} "On or before February 2, 2001, [Kassouf] shall file with the court and serve upon counsel for [Pantona], a notice which states the names and addresses of all individuals who have been responsible for business records, including, but not limited to, books and accounts, for any of [Kassouf's] business interests for the period of January 1, 1989 to the present.
 {¶ 8} "On or before February 2, 2001, [Kassouf] shall cooperate in choosing a date for the deposition of [his] wife, Katherine Kassouf. The deposition shall be limited to Katherine Kassouf's knowledge of household expenditures and expenses.
 {¶ 9} "The parties may stipulate as to [Kassouf's] income in lieu of presenting the above documentation of witnesses.
 {¶ 10} "[Kassouf's] failure to comply with the foregoing provisions will result in the court dismissing with prejudice pursuant to Civil Rule 41(B) [Kassouf's] requests for child support which date from 1989 to the present.
 {¶ 11} "The next pretrial hearing is set for Tuesday, February 6, 2001 at 10 a.m. A final pretrial will be set on April 3, 2001 at 2 p.m. Counsel for each party shall appear at the final pretrial with proposed child support worksheets and health insurance information. Counsel shall be prepared to answer questions and discuss settlement.
 {¶ 12} "The parties shall complete the exchange of documents on or before February 2, 2001, as well as any other discovery on or before April 3, 2001. Failure to do so without good cause shall result in appropriate sanctions, including, but not limited to, the dismissal of [Kassouf's] child support motions, or a fine in the amount of $250.00 for each item and each day that items were not produced."
 {¶ 13} According to Kassouf's brief, a letter from Kassouf's attorney shows that Kassouf did turn over some tax returns to the court and a list of names to Pantona's counsel.
 {¶ 14} On February 1, 2001, Kassouf moved to set aside or, in the alternative, to modify the magistrate's decision. Kassouf sought, among other things, to have the trial court conduct an in camera inspection of his records prior to release to Pantona's counsel. On September 6, 2001, the trial court denied Kassouf's motion to set aside the magistrate's order. The court did, however, grant in part his motion to modify the order. Through this judgment entry, the trial court required Kassouf to "provide his personal and corporate federal tax returns, including attachments, for the tax years 1989 to 2000. [Kassouf] shall also provide a notice to Counsel for [Pantona] of the names and addresses of all individuals who have been responsible for business records * * * for any of [Kassouf's] business interests for the period of 1989 to the present. All of these items shall be provided to Counsel for [Pantona] at least 45 days prior to hearing." The trial court also granted Kassouf's request to allow Pantona and her counsel (and her experts) to see the records so long as no copies would be made. As part of the order, the trial court stated, that "[Kassouf's] failure to comply with the foregoing provisions will result in the Court dismissing with prejudice pursuant to Civil Rule 41(B) [Kassouf's] requests for child support which date from 1989 to the present." The hearing was scheduled for October 22, 2001 and then rescheduled for December 19, 2001.
 {¶ 15} On September 1, 2001, Pantona's counsel sent a one-sentence letter to Kassouf's counsel, to wit, "Please advise me of your client's intentions with respect to [the September 6] discovery order." Pantona's counsel received no response. On November 6, 2001, Pantona's counsel filed an affidavit, which alerted the court that, among other things, he "ha[d] not been provided with any documents or notices ordered by the court within the time limitation imposed by the Court[.]" Finally, on November 8, 2001, the trial court entered a final judgment, which dismissed with prejudice Kassouf's claim for child support because Kassouf "ha[d] failed to comply with this Court's discovery order."
 B. {¶ 16} Kassouf appealed the trial court's dismissal and raises the following assignment of error:
 {¶ 17} "The trial court committed reversible error and abused its discretion in dismissing appellant's requests for child support which date from 1989 to present pursuant to Ohio Civil Rule 41(B)(1)."
 {¶ 18} Kassouf argues that he was not provided sufficient notice: "Given the foregoing attempted compliance with the Magistrate's order, the Trial Court's delay in ruling on [Kassouf's] Motion to Set Aside [(seven months)], and the subsequent withdrawal of [Kassouf's] attorneys [(October 1 and 2, 2001)], it was prejudicial error to dismiss [Kassouf's] requests for child support without affording [Kassouf] an opportunity to respond to [Pantona's] affidavit."
 Involuntary Dismissals {¶ 19} Civil Rule 41(B) states:
 {¶ 20} "(B) Involuntary dismissal; effect thereof.
 {¶ 21} "(1) Failure to prosecute. Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim."
 {¶ 22} According to the Supreme Court, "a dismissal with prejudice is proper only `when counsel has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal.'" Hillabrand v. Drypers Corp. (2000), 87 Ohio St.3d 517, 518, quoting Quonset Hut, Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46, syllabus. Futher, "`[t]he purpose of notice is to "provide the party in default an opportunity to explain the default or to correct it, or to explain why the case should not be dismissed with prejudice."'"Hillabrand at 518, quoting Logsdon v. Nichols (1995), 72 Ohio St.3d 124,128, quoting McCormac, Ohio Civil Rules Practice (2 Ed. 1992), 357, Section 13.07.
 {¶ 23} In Hillabrand, the trial court granted the motion for sanctions of Hillabrand's party-opponent two days after the motion was filed and on the same day that Hillabrand received the motion. The appellate court affirmed. In reversing, the Supreme Court held that "[a] `reasonable opportunity to defend against dismissal' under Quonset
contemplates that a trial court allow the party opposing dismissal the opportunity to respond at least within the time frame allowed by the procedural rules of the court." Hillabrand at 519-520. Because the civil rules allowed Hillabrand fourteen days to respond to the party-opponent's motion for sanctions, the Supreme Court held, the trial court erred by not allowing Hillabrand at least that much time to respond.
 Discussion {¶ 24} Here, we hold that the trial court sufficiently warned Kassouf that dismissal would result for his failure to comply with discovery deadlines. The trial court issued an order that rejected Kassouf's Fifth Amendment right argument. On January 22, 2001, the magistrate set a discovery deadline of February 2, 2001. The magistrate explained that failure to comply "will" result in dismissal. On February 1, 2001, Kassouf filed his motion to modify the magistrate's January 22, 2001 decision. On September 6, 2001, the court granted in part Kassouf's motion to modify the magistrate's order and, among other things, set a discovery deadline of 45 days before the hearing. Again, Kassouf was warned that failure to comply "will" result in dismissal.
 {¶ 25} In other words, Kassouf was notified that failure to comply with the discovery deadline would result in dismissal through the trial court's journal entry of January 22, 2001. Rather than providing discovery on February 2, 2001, Kassouf (on February 1st) filed his motion to set aside or, in the alternative, to modify the January 22nd order. He therefore was given notice of a potential dismissal and responded to that notice. In his February 1st motion, Kassouf mentions the trial court's threat of dismissal.[2]
 {¶ 26} When the trial court granted in part his motion to modify the January 22nd order, it also set a new discovery deadline and a second warning that failure to meet that deadline would result in dismissal. The new deadline was 45 days prior to hearing. The hearing was set for December 19, 2001, which would have made November 4, 2001 the discovery deadline. The trial court dismissed Kassouf's claim on November 8, 2001.
 {¶ 27} This situation, therefore, is distinguishable fromHillabrand. Kassouf was given prior notice of the trial court's intent to dismiss and he did respond to that notice.[3] Indeed, Kassouf did not provide discovery before the February 2, 2001 deadline, but rather filed a motion with the court explaining his inability to comply. This response is exactly the kind contemplated by the Supreme Court, which requires that courts provide the defaulting party an "opportunity to explain the default or to correct it, or to explain why the case should not be dismissed with prejudice." Hillabrand at 518. Furthermore, the courtgranted in part his request for modification of the discovery order.
 {¶ 28} Therefore, Kassouf was given more than one warning that failure to comply with discovery orders would result in dismissal. On the eve of the first such deadline, Kassouf responded not with the discovery but with a request for modification of the discovery order. This request was granted in part in an order that set a second discovery deadline. Kassouf missed the second deadline without an explanation. In his February 1st motion for modification, he mentioned the magistrate's threat of dismissal. He cannot claim ignorance, therefore, as to the second threatened dismissal.
 {¶ 29} We therefore hold that the trial court did not abuse its discretion in dismissing with prejudice Kassouf's motions for modification of child support and affirm.
 Appeal No. 81012 Introduction {¶ 30} Kassouf here appeals the trial court's denial of his motion to vacate a judgment of the trial court. The court had ordered Kassouf to return the children to the court's jurisdiction after he had taken the children to Lebanon for school. Kassouf argues that he did not receive service of Pantona's motion to enforce this order. The relevant facts are set out below.
 Facts {¶ 31} Because Pantona had had little contact with the children since Kassouf had been awarded custody, she filed a motion on April 5, 1999 to modify parental rights and responsibilities and visitation. A hearing was held on July 13, 1999, after which the trial court issued a judgment entry on August 26, 1999, finding that Pantona "and sons have not had reasonable visitation and that reuniting of [Pantona] and the children is necessary and appropriate." The court therefore ordered the parties to engage in counseling. The court stated that "the therapist's office shall be the location of recommencement of the visitation between [Pantona] and her sons; and that the parties shall abide by the advice of the therapist as to progression of visitation between [Pantona] and the children."
 {¶ 32} A scheduled counseling session of September 11, 2001 had to be cancelled because Kassouf had taken the children to Lebanon to attend school. On September 9th, Kassouf faxed a letter to the counselor explaining that one of his sons failed to call Pantona and tell her that he and his brother would be attending school in Lebanon. Kassouf's fax continues, "[f]or the past three years there has been no real communication between Ms. Pantona and the boys on either of their part, other than what I have had to force the boys to initiate. This move will not interfere with the current relationship the boys have with Ms. Pantona. We hope to reschedule the meetings during the period of time when we will be in the United States."
 {¶ 33} On September 24, 2001, Pantona filed an emergency ex parte motion to return the children to the jurisdiction of the trial court and for attorney fees. On October 4th, the court ordered Kassouf to return the children immediately. On October 23rd, Pantona filed a motion to enforce the court's October 4th order to return the children to the court's jurisdiction. Kassouf claims he was never served with this motion. The attempts at service were made at Kassouf's Southington, Ohio residence. Kassouf urges this court to find this service improper since he had given Pantona information "as to where Mr. Kassouf's family would stay" and that she could have served him there.
 {¶ 34} On January 8, 2002, Kassouf filed a motion to vacate the court's October 4th journal entry ordering the children to return. On February 13, 2002, the court denied his motion and ordered Kassouf to return the children to the court's jurisdiction within fourteen days from this date. Kassouf filed a notice of appeal on March 14, 2002.
 Assignment of Error {¶ 35} Kassouf raises the following assignment of error:
 {¶ 36} "The trial court erred to the prejudice of plaintiff-appellant when it overruled plaintiff's motion to vacate judgment entry ordering return of the minor children of parties immediately."
 {¶ 37} Kassouf argues that service to Kassouf's Southington address is no good since, at the time of the attempted service, he was residing in Lebanon. He also states that Pantona's motion "acknowledged that she has not served [Kassouf] with service of process in Lebanon where [he] is located." In support, he points to Civ.R. 75(J), which states in relevant part that the "continuing jurisdiction of the [divorce trial] court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6." Kassouf argues that service under Civ.R. 4.5, regarding process in a foreign country, is therefore required. Since Pantona attempted service only at the Southington, Ohio address and not pursuant to Civ.R. 4.5, Kassouf continues, Pantona failed to complete service. Pantona counters that Southington, Ohio is Kassouf's permanent residence and that service thereto was proper.
 Discussion {¶ 38} Kassouf's argument fails for two reasons: (1) Civ.R. 75(J) does not apply to the matter at issue because the court's jurisdiction had previously been invoked and was continuing; and (2) assuming Civ.R. 75(J) does apply, Pantona's attempted service at Kassouf's Southington, Ohio residence was proper.
 The Trial Court's Continuing Jurisdiction {¶ 39} Civil Rule 75(J) requires those involved in post-decree divorce actions to "invoke" the "continuing jurisdiction" of the trial court by motion, which "shall be served" upon the party-opponent according to Civ.R. 4 to Civ.R. 4.6. As Kassouf argues in his brief, the purpose of service is to provide notice of such actions. A court cannot issue orders upon those who were unaware that action was being taken.
 {¶ 40} Unfortunately for Kassouf, he was well aware of the order at issue, to wit, the visitation/counseling order of August 26, 1999. When he violated that order by taking his children to Lebanon without the advice of the counselor, Pantona filed her emergency ex parte motion to return the children to the court's jurisdiction. She was not seeking thereby to re-invoke the court's jurisdiction nor was seeking to modify an existing order. In other words, Pantona did not need to re-invoke the court's jurisdiction as to the counseling schedule because the court already had jurisdiction. Further, Pantona did not need to serve Kassouf to subject him to the court's jurisdiction because he was already subject to that jurisdiction by authority of the continuing visitation/counseling order.
 {¶ 41} That Kassouf was well aware of the counseling/visitation order is shown by his fax, which states that he and the children would be unable to attend a scheduled counseling session. Kassouf followed the order until the fall of 2001 when he suddenly and without warning stopped.
 {¶ 42} That the order was continuing is shown by the following statement in the order: "the therapist's office shall be the location of recommencement of the visitation between [Pantona] and her sons; and that the parties shall abide by the advice of the therapist as to progressionof visitation between [Pantona] and the children." (Emphasis added.) Kassouf did not seek the advice of the therapist before unilaterally postponing the counseling sessions.
 {¶ 43} To suggest that Kassouf needed service of Pantona's motion to enforce an order (1) of which he was aware, (2) that he had been following, and (3) that he unilaterally ignored, is ludicrous. He knew that he was required to "abide by the advice of the therapist as to the progression of visitation between [Pantona] and her children[,]" yet he informed the therapist — without discussion, much less the therapist's advisement — that he "hope[d] to reschedule the meetings during the period of time when we will be in the United States."
 {¶ 44} Had Pantona styled her "motion" in such a way as to give the impression that she was merely informing the court that Kassouf was in violation of the order, the court could have properly sua sponte ordered Kassouf to return the children. Form should not take the place of substance. Courts in Ohio have required service when parties such as these file show-cause motions or motions for sanctions or contempt. Such is not the situation here. Here, Pantona simply sought enforcement of an existing order of which Kassouf was aware.
 Service {¶ 45} Assuming for the sake of argument that Pantona was required to serve Kassouf with her motion, we would hold that Pantona properly served Kassouf at his Southington, Ohio address.
 {¶ 46} Kassouf's argument that Pantona had to serve him "where he [was] located" is incorrect. In his fax to the counselor explaining that he and the children were leaving the country, Kassouf expressed his intention to be in Lebanon during the children's attendance at school. Further, Kassouf stated that "[w]e hope to reschedule the meetings during the period of time when we will be in the United States." Nothing Kassouf said at the time or later expressed an intention to permanently move to Lebanon. In fact, the letter expressly states that they will return to the United States. Therefore, service to the Southington, Ohio address, Kassouf's address, was proper, as the trial court found. As Kassouf states in his brief, the address provided by him in his fax was merely where he would be "stay[ing]." His permanent address, in the court's records, was the Southington, Ohio address.
 Conclusion {¶ 47} We therefore hold that the trial court did not err when it dismissed Kassouf's motion to vacate the court's judgment entry requiring the return of the children to the court's jurisdiction. Service, though successful as explained above, was not required under Civ.R. 75(J) to re-invoke jurisdiction since the jurisdiction of the court was already invoked under authority of the existing and continuing counseling/visitation order of August 26, 1999.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court — Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and DIANE KARPINSKI, J., CONCUR.
[1] {¶ a}The court stated that Kassouf's "business and partnership records are not protected by [his] assertion of his Fifth Amendment rights. [Kassouf] shall comply with all other discovery to the extent possible without waiving his Fifth Amendment right against self-incrimination."
{¶ b}Kassouf is therefore incorrect when he states in his brief that the trial court "did not resolve application of [Kassouf's] Fifth Amendment rights."
[2] {¶ a}The motion reads in relevant part:
{¶ b} "The deadline for compliance with the conditions of the magistrate's order was set for February 2, 2001. Failure to comply with the provisions of the order may subject [Kassouf] to the imposition of sanctions, expressly including the dismissal of his child supportmotions or a fine in the amount of $250.00 for each day that an item is not produced.
{¶ c} "Subsequent to the attorney conference [January 18, 2001], it has become apparent that it may be impossible for [Kassouf] to comply with certain terms set forth in the magistrate's order. Furthermore, [Kassouf] maintains an interest in protecting his privacy and confidentiality of many of the documents that must be exchanged pursuant to the order. [Kassouf] therefore moves to set aside the order or, in the alternative to modify its terms." (Emphasis added.)
[3] Although this case is distinguishable from Hillabrand, we believe that a fair reading of Civ.R. 41(B)(1) would have allowed the trial court to dismiss Kassouf's claim had there been no warning in January, 2001. The rule requires "notice," not second chances. We once again therefore "urge the Supreme Court to put teeth back into" the rules that allow trial courts to enforce their discovery orders. Rankin v. Willow ParkConvalescent Home (1994), 99 Ohio App.3d 110, 113.